BENJAMIN FISKE *et al. versus* THE NEW ENGLAND
MARINE INSURANCE COMPANY.

The time of sailing of a vessel insured is not, in itself, a fact material to the risk;
but where there has been a severe storm *immediately* after the sailing of the vessel,
which was known to the insured but unknown to the insurer, or where she is a
missing ship, in such cases, the time of her sailing becomes material, and if it be
not communicated to the insurer, the policy is void.

A vessel was insured by the defendants on March 13, 1832, "*at and from* Boston to
Smyrna and at and from thence back to Boston." It appeared that she sailed
from Boston on the 18th or 19th of November, 1831, and was never heard of
afterwards, but that she was not out of time, when the insurance was effected;
that there was a severe storm in Boston on November 22, 1831 ; and that one
underwriter had refused to insure her, on being informed that she sailed before
that day. Several underwriters testified, that ordinarily, they should make no
difference in the premium, on account of the vessel's having sailed before the
insurance was effected, but that in the season of 1831-2, which was unusually
severe and destructive, it would have made a difference in their opinions ; but it
was proved, that insurance was effected on the profits of a portion of the cargo of
the same vessel, on February 23, 1832, at the same rate of premium and that the
underwriter knew that she had been gone a " long time." It was *held*, that the
time of the vessel's sailing was not a fact material to the risk under these circum-
stances, and that therefore, if it were not communicated to the defendants, this
would not avoid the policy ; but that if it had been a material fact, the burden
of proof would have been on the defendants, to show that it was not communicated.

THIS was assumpsit on a policy of insurance, dated March
13, 1832, and underwritten by the defendants, for the sum of
$7000, on the brig Elizabeth and cargo, at and from Boston
to Smyrna and at and from thence back to Boston, at a pre-
mium of two and a half per cent. The writ was dated Feb-
ruary 5, 1833.

·At the trial, before *Wilde* J., the plaintiffs proved their
interest in the vessel, of which they were sole owners, and
in one half of the cargo, the other half belonging to James
Andrews & Son. The whole of the cargo was of the value
of $20,313. They also proved, that the brig sailed from
Boston on the 18th or 19th of November, 1831, and had
never been heard from since.

The defendants objected to the claim of the plaintiffs, on
the ground, that the insurance was procured by them after
the sailing of the vessel and without their communicating that
circumstance to the defendants ; and that this fact was mate-
rial, and, if it had been known to the defendants, would have

nfluenced them on the question of taking the risk, or in fixing the rate of premium.

John G. Powers, a witness produced on the part of the defendants, testified, that he was a part-owner with the plaintiffs, of a brig called the Goldhunter ; that on the morning of the day when the policy in question was underwritten, he received a letter from New York, informing him that the Goldhunter was about starting from New York for Boston ; that he determined to procure insurance upon her, and mentioned it to Fiske, one of the plaintiffs, who were partners ; that Fiske said, that the witness might get insurance for them likewise on the Goldhunter, and also requested the witness to get insurance on two other vessels, the Sereno, from Tarragona, and the Elizabeth *from Boston to Smyrna and back* ; that the witness wrote the names and description of the voyages, as above, on a piece of paper, and that Fiske marked the premiums he was willing to give, with a lead pencil ; that the witness handed this memorandum to Hall, the president of the New England Insurance Company, who said, that he would take the three vessels ; that the witness laid the memorandum on the desk of the secretary of the office, and has not seen it since ; that the witness could not recollect distinctly whether Hall inquired or not if the Elizabeth had sailed, or whether he so informed Hall or not, but thinks he did not ; that the witness knew that she had sailed ; that it was published in the newspapers as usual ; that he had no intention of concealing it ; that Hall has several times explicitly disclaimed all belief, that either the witness or the plaintiffs were guilty of any fraud or intentional concealment ; that the witness meant to insure the Goldhunter at and from New York, but did not intend to affirm that she was at New York, or the Sereno, at Tarragona, at that time ; and that he did not recollect what he said respecting the situation of those vessels.   He also testified, that the usual length of voyages from Boston to Smyrna and back, is six months.

The defendants produced several witnesses who were presidents or directors of insurance companies, and who testified in substance, that the storms in November and December 1831, were unusually severe and destructive ; and that the

voyage across the Atlantic i · winter was more hazardous than in other seasons.

Several of these witnesses also, and Pierce, president of the United States Insurance Company, who was called by the plaintiffs, stated, that they in practice always made inquiries respecting the time of sailing, age of the vessel, &c. ; that the usual premium of insurance to Smyrna, or from Smyrna, is one and a quarter per cent., without regard to the season of the year ; that, ordinarily, they should make no difference in the premium on account of the vessel's having sailed before the insurance was made ; but that in the seasons of 1831–32, it would have made a difference, in their opinions.; that it would depend on the kind of weather the vessel had had ; that they would prefer a March risk to a November risk ; that the average length of a voyage to Smyrna and back, is about six months ; that policies are usually filled up with the words " at and from" ; and that it was customary to fill them up in this manner, when the parties knew that the vessel had sailed.

Cartwright, one of these witnesses, testified that on February 23, 1832, Andrews applied to him for insurance on the risk in question, and that the witness inquired when the vessel sailed ; and that on being informed that she sailed before November 22, 1831, on which day there was a gale of wind, he declined underwriting. He also testified, that where the application was to underwrite " from" a place, he should suppose the vessel had sailed, but if it was " at and from," he should never suppose the vessel had been gone four months.

The plaintiffs then produced the secretary of the Neptune Insurance Company, who testified, that on February 23, 1832, Andrews procured insurance at their office, for $3,000 on one half of the profits of the cargo of the Elizabeth, at a premium of one and a quarter per cent. ; and that the policy runs, " at and from Boston to port or ports in the Mediterranean, including Smyrna." He further stated, that he did not know that the president was informed when she sailed, but he knew that she had been gone a long time.

The plaintiffs produced two witnesses, who testified, that

they had open policies on vessel or vessels to Smyrna, all the year round, at a premium of one and a quarter per cent. They also produced other witnesses, who stated, that the Elizabeth was not out of time on March 13, 1832.

There was no evidence, that the defendants complained of any concealment, or of not being informed of the time of sailing, till payment for the loss was demanded. The memorandum which Powers testified he laid upon the desk of the secretary of the defendants, was not produced.

The judge instructed the jury, that if they were satisfied that it was material for the insurers to know that the vessel had sailed, and that this fact was not communicated or known to them, the defendants were entitled to a verdict.

The jury returned a verdict for the plaintiffs, for a total loss.

The defendants moved for a new trial, for the following reasons :

1. Because the verdict is against the evidence in this, that it appeared that the fact of the vessel's having sailed, was not communicated by the plaintiffs at the time of the application for insurance ; and it was proved by the testimony of all the witnesses who were examined to this point, that, under the circumstances, the time of the vessel's sailing was a fact material to the risk ; and this was uncontradicted, unless the following fact should be deemed to have that tendency, to wit, that one underwriter took the same risk, after he was informed that the vessel had sailed " a long time " previously.

2. Because the defendants contended, generally, that, under the circumstances of the case, it was the duty of the assured to communicate the time of the sailing of the vessel ; but the judge instructed the jury, that unless the time of sailing was material to the risk, it was not the duty of the assured to communicate that fact to the underwriter.

*S. Hubbard* and *J. Pickering*, for the defendants. A concealment of a material fact, whether intentional or innocent, avoids the contract of insurance. Marsh. on Ins. (3d ed.) 463, 465. The effect of such concealment is not to be judged of by subsequent events. Marsh. on Ins. (3d ed.) 471 ; *Lynch* v. *Hamilton,* 3 Taunt. 37 ; *Lynch* v. *Dunsford,*

*Fiske
v.
New Eng.
M. Ins. Co.*

*March 26th*

14 East, 494. Nor does it make any difference, that a knowledge of the fact concealed would not have placed the underwriter in a better situation. Hughes on Ins. 351. What are *material* facts ? They are such as would have influenced the mind of the underwriter. Any thing that constitutes an exception to the ordinary state of things, is a material fact. *Bridges* v. *Hunter*, 1 Maule & Selw. 15 ; *Lynch* v. *Hamilton*, 3 Taunt. 37 ; *Burr* v. *Foster*, 2 Dane's Abr. 122 ; *Ely* v. *Hallett*, 2 Caines's R. 57. As the words " at and from Boston to Smyrna" are used in the policy, the defendants must have inferred that the vessel was *at* Boston, in the mercantile sense of the word, that is, that she was either *at* Boston or had sailed thence recently. She had been gone four months ; this was an unusual circumstance, and it was the duty of the insured to state it to the underwriters.

It is the duty of the assured to know and to communicate what is material to the risk. In the present case, there was a storm on November 22, 1831, only three days after the sailing of the vessel ; and Cartwright testified that he refused to underwrite, on being informed that she sailed before that day ; the time of her sailing was, therefore, a material fact, and should have been communicated. It is not incumbent on the underwriter to keep a register of the weather. *Johnson* v. *Phenix Ins. Co.*, 1 Wash. C. C. R. 378.

It is not true that where the plaintiff makes out a good *primâ facie* case, the burden of proof, in regard to the whole defence, is on the defendant. Where the defendant lays a foundation for a defence on the ground of unseaworthiness or deviation, the burden is shifted. In this case, the burden is on the plaintiffs to show, either that the fact of the vessel's having sailed was not material, or that it was communicated. The difficulty arises from its not appearing on which ground the verdict was founded. If the jury were divided in opinion as to both of these grounds, their verdict could not be supported. *Coffin* v. *Jones*, 11 Pick. 45. The jury may have been of opinion, that the time of the vessel's sailing was a material fact ; if so, the burden of proof was on the plaintiffs to show that it was communicated to the defendants ; and

there is not sufficient evidence in the case, to sustain a verdict rendered on the ground that it was so communicated.

It may be said that the question of materiality was settled by the jury ; but we contend, that the facts being found by the jury, it is for the Court to determine finally upon their materiality. *Willes* v. *Glover*, 4 Bos. & Pul. 14 ; *Bridges* v. *Hunter*, 1 Maule & Selw. 15 ; *Elton* v. *Larkins*, 8 Bingh. 198 ; *Fitzherbert* v. *Mather*, 1 T. R. 12 ; *Kohne* v. *Ins. Co. of N. America*, 6 Binn. 219 ; *Hoyt* v. *Gilman*, 8 Mass. R. 336 ; *Alsop* v. *Coit*, 12 Mass. R. 40 ; *Burr* v. *Foster*, 2 Dane's Abr. 122.

*J. Mason* and *C. P. Curtis*, for the plaintiffs. The principal ground 'of defence is, that the verdict is against the evidence ; that it was proved, that there was a material fact concealed, which it was the duty of the assured to communicate. Was the time of sailing of the vessel a material fact ? Several of the witnesses were of opinion that it was, under the circumstances ; but their opinions were formed after all the events had happened. The *fact* of insurance being effected at the Neptune Insurance office on the same risk and at the same rate of premium, outweighs many *opinions*. The materiality of the time of sailing was properly left to the decision of the jury ; *Maryl. Ins. Co.* v. *Ruden*, 6 Cranch, 338 ; *N. Y. Firemen's Ins. Co.* v. *Walden*, 12 Johns. R. 513 ; *Huguenin* v. *Rayley*, 6 Taunt. 186, (Am. ed.) note ; and they found against the defendants. As to the question, whether the time of sailing was communicated or not, concealment is strictly a matter of defence and must be proved by the defendants. *Tidmarsh* v. *Wash. F. & M. Ins. Co.*, 4 Mason, 439. The verdict cannot be said to be against the evidence, on this point, in the entire absence of direct proof in regard to it, and when every presumption of law is in favor of the plaintiffs. *Blanchard* v. *Colburn*, 16 Mass. R. 345. The defendants impute no fraud. Powers says, that *he thought* he did not inform Hall of the time of sailing of the vessel ; but the jury had a right to disregard his testimony, even if he had been more positive, and the Court would not set aside their verdict as against evidence. *Harding* v. *Brooks*, 5 Pick. 224

We contend further, that the insured is not bound to com municate to the underwriter the time of sailing, unless the vessel is a missing ship. *Elton* v. *Larkins,* 5 Carr. & P. 385 ; *S. C.* 8 Bingh. 198 ; *Fort* v. *Lee,* 3 Taunt. 381 ; *Foley* v. *Moline,* 5 Taunt. 430 ; *Beckwith* v. *Sydebotham,* 1 Campb. 116. There is not a case to be found, in which it is held, that an innocent omission to state the time of sailing will avoid the policy, whatever elementary books may say ; the cases all turn upon intentional concealment and bad faith. *Littledale* v. *Dixon,* 4 Bos. & Pul. 151 ; *Flinn* v. *Tobin,* 1 Moody & Malk. 367 ; *M'And ew* v. *Bell,* 1 Esp. R. 373 ; *Kirby* v. *Smith,* 1 Barn. & Ald 672.

It is said, that the defendants had a right to presume, that the vessel had *recently* sailed. The word *recently* is extreme-ly indefinite ; it would not mean the same in regard to all voyages ; if a vessel had sailed six days previously on a voyage to Portland, this would not be deemed, *recently* ; but six months previously would be recently, on a voyage to Canton.

PUTNAM J. delivered the opinion of the Court. The plaintiffs certainly made out a *prima facie* case, and must recover unless the defendants rebut it by proof of a legal defence to the action.

They rely upon the concealment by the plaintiffs, of the time of the sailing of the vessel. And if that was material to the risk and was not communicated, the defendants should prevail, notwithstanding the plaintiffs did not intend to deceive or defraud the defendants by withholding the information. No fraudulent intent on the part of the plaintiffs is suggested by the defendants.

This matter of defence must be satisfactorily proved by the defendants. They must prove that the time of sailing was a fact material to the risk, and that the plaintiffs withheld the information.

The jury have found a verdict for the plaintiffs ; so in effect finding, either that the time of the sailing was not material, or if it was, that it was communicated to the defendants. And they do not say, upon what grounds they returned their verdict. They might have found that the time of sailing was

material, and if they did so find, then the defendants coi tend, that the burden would have been upon the plaintiffs, to show that they communicated the fact to the defendants. And they further contend, that there is not sufficient evidence in the case to sustain the verdict which may have been given upon that ground.

The defence of concealment is nearly allied to fraud and misrepresentation. It is not sufficient to suggest it. The party alleging must prove the fact.

Mr. *Roscoe* states the general rule very well. " Where the issue involves a charge of culpable omission, it is incumbent on the party making the charge, to prove it, although he must prove a negative, for the other party shall be pre sumed to be innocent until proved to be guilty." Roscoe on Evid. 52. The jury were not satisfied that there was any concealment. The defendants cannot expect the Court to disturb the verdict, unless they prove that the evidence in the case established clearly, that the time of sailing was material, and that the plaintiffs did not communicate it. The defendants have the same burden of proof before the Court, which they had before the jury, touching every matter or thing which would constitute such a concealment as would avoid the policy.

Let us consider whether the time of sailing was material to the risk. We think this must depend upon some other fact which is connected with the time ; for example, if there were a severe storm immediately after the ship sailed, which was known to the assured, and unknown to the insurer ; if there were a hostile ship watching the departure of the vessel, known to the assured, unknown to the insurer ; if she were a *missing* ship, and known to be out of time, when the policy was effected ; the time of sailing would be essentially material to the risk. Withholding the information of the time of sailing, in such circumstances, or in any others having a peculiar and necessary connexion with or relation to the time of sailing, would be very strong evidence of a fraudulent intent on the part of the assured, and would avoid the policy.

But " a party is not bound to communicate the time of sailing, unless at the time when the policy is effected it is a

27 *

*missing* ship." Per *Tindal* C. J.   *Elton* v. *Larkins*, 5 Carr & P. 385.

Now this was not a missing ship.  So the witnesses called by the plaintiffs testified.  She sailed on the 18th or 19th of November, 1831, on a voyage to Smyrna and back to Boston ; and it is proved that the usual length of such voyages is six months.  The policy was written on March 13, 1832 ; not quite four months after she sailed.  Whether a ship be out of time or not, must depend upon the ordinary length of the voyage or passage described in the policy, compared with the time she has been out.  In the case at bar only two third parts of the usual time for the accomplishment of the voyage had elapsed.  We cannot imagine that a jury, upon such evidence only, could have found that this was the case of a missing ship, or of a ship out of time.  She was not out of time It was proved that the Neptune Insurance Company, on February 23, 1832, insured $3000 for Andrews on the profits of half of the cargo of this ship on the outward voyage, at the common premium of one and a quarter per cent, notwithstanding the president knew that the ship had been gone *a long time*.  That policy was less favorable to the underwriters than the one now under consideration ; as in the former there could be no benefit of salvage, while there would be in the latter.  The jury might ·reasonably have thought, when the policy in the case at bar was made, that there was nothing extraordinary in regard to *the time* that the ship had been upon her voyage, that called for any increase of premium, or indicated any increased risk.

But it was argued for the defendants, that they proved by Cartwright, that there was a gale on November 22, 1831, and that he refused to underwrite, on being informed that the ship sailed before that day.  And so they contend, that there was something extraordinary happening so *near* the time of sailing, as to increase the risk, and to render it necessary for the plaintiffs to disclose the time when the ship sailed.

In the case of *Ely* v. *Hallet*, 2 Caines's R. 57, the plaintiff had special information of a violent storm which took place eleven hours after the vessel sailed, which he did not particu

larly describe to the underwriters ; and it was held by a ma-
jority of the court that he could not recover.

But here the vessel sailed three or four days before the
storm of which Cartwright speaks, was observed at Boston.
If the ship proceeded upon her voyage with usual despatch,
she might, on November 22, 1831, have been, in pleasant
weather, two or three hundred miles distant from Boston,
where the storm then raged.   It would have been a somewhat
violent presumption, to assume, as a fact, that the ship en-
countered that storm.   We think in the absence of any other
proof upon the point, that this evidence is not sufficient to
establish the fact, that there was any thing extraordinary, which
was connected with the time of sailing, which rendered it ma-
erial to the risk.

Several presidents of insurance offices concurred in opin-
ion, that generally they should make no difference in the
premium on account of the vessel having sailed before the
insurance was made ; but that in the seasons of 1831–32, the
time of sailing would make a difference, in their opinions.
But as to that opinion, the jury had evidence, in regard to the
insurance made for Andrews by the Neptune Insurance Com
pany, that no difference was made in the premium.   They
had *facts* to weigh against opinions, expressed after the event.

It was contended for the defendants, that the policy was
" *at and from* Boston to Smyrna &c.," and so, that the de-
fendants might well suppose, that the vessel had not sailed
when the policy was made, or at any rate, had not been out
four months on her voyage.   But it is proved, that such is
the usual manner of describing the risk, when both parties
well know that the ship has sailed.   No inference against the
plaintiff, on that account, could be made, under the circum-
stances.   Besides, the memorandum which the plaintiffs made
for the insurance was " *from Boston to Smyrna* " &c., and not
" *at and from.*"   It was left with the defendants, and was not
·roduced.   Probably it is lost.   That however is not the
plaintiff's fault.

Upon reviewing the evidence on this point, we think that
the jury might well have found, that the time of sailing, under
the circumstances, was not material to the risk.

But suppose the jury were of opinion, that the time of sail ing was material to the risk, then the defendants contend, that the burden was upon the plaintiffs to prove that they communicated the fact. We have already cited the opinion of a learned jurist, (Mr. Roscoe,) that the negative should be proved by the defendants, under such circumstances. They are to affect the plaintiffs with a culpable omission of duty. They are to remove the presumption of the law, that the plaintiffs did their duty, and conducted themselves honestly and properly. We think it was incumbent on the defendants to satisfy the jury, that the plaintiffs withheld that information, if it were material to the risk.

Upon this point, Powers (who procured the policy) says expressly, that he knew that the vessel had sailed ; that it was published in the newspapers ; and that he had no intention of concealing it. He cannot recollect distinctly, whether he informed Hall (the president) or not, that the Elizabeth had sailed ; but thinks he did not.

Now as the witness had no knowledge upon the fact in ques- tion, his thinking one way or the other, was not evidence upon which the jury could safely rely. But they had a fact, which was proved by Pierce, the president of the United States Insurance Company, which was of much weight ; that the witness, *in practice, always* made inquiries respecting the time of sailing of the vessel. There is no evidence in the case, that the defendants have any practice upon this point, which differs at all from that of the United States Insurance Company. It certainly has reason and common sense to sup port it. There is no suggestion, that the plaintiffs made a false answer to any inquiry made by the defendants. If that were proved, the case would be clear for the defendants. It the jury were satisfied, that the time of sailing was material, we think they might well come to the conclusion, that the de- fendants had failed to show that the plaintiffs withheld that information. If the point was left doubtful, then the defend- ants fail to make out a case of concealment.

Upon the whole matter, the Court are all of opinion, that the judgment should be rendered for the plaintiffs, according to the verdict.